UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AARON SCOTT,

        Plaintiff,

v.                                 Case No. 8:20-cv-306-AEP

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

        Defendant.
_____/

**ORDER**

Plaintiff seeks judicial review of the denial of his claim for a period of disability and Supplemental Security Income ("SSI").  As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

**I.**

**A.  Procedural Background**

Plaintiff filed an application for a period of disability and SSI (Tr. 491-500).  The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration (Tr. 367-85, 389-410).  Plaintiff then requested an administrative hearing (Tr. 428-30).  At Plaintiff's request, the ALJ held a hearing

---

[1]  Kilolo Kijakazi is now the Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Kilolo Kijakazi should be substituted for Commissioner Andrew M. Saul as the defendant in this matter.  No further action needs to be taken to continue this matter by reason of the last sentence of section 205(g) of the Social Security Act.  42 U.S.C. § 405(g).

at which Plaintiff appeared and testified (Tr. 31-60). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 13-30). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 6-12). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

**B.   Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1970, claimed disability beginning April 25, 2016 (Tr. 36, 491).[2] Plaintiff obtained a limited education (Tr. 47). Plaintiff's past relevant work experience included work as a hospital cleaner, kitchen helper, and stores laborer (Tr. 51, 54). Plaintiff alleged disability because of heart problems, degenerative disc disease, diabetes, neuropathy, gout, high blood pressure, and chronic right leg pain from prior surgery on tibia (Tr. 368).

In rendering the administrative decision, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since April 25, 2016, the application date (Tr. 17). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: *status post* open reduction and internal fixation (ORIF) of the right ankle with follow up removal of failed hardware; a history of coronary artery disease; hypertension; diabetes mellitus with neuropathy; obesity; and right eye cataract (Tr. 17-18). The ALJ also

---

[2] Plaintiff originally claimed disability beginning on July 1, 2007 (Tr. 492). But at the hearing before the ALJ, Plaintiff amended his alleged onset date to April 25, 2016 (Tr. 36, 510).

determined Plaintiff's medically determinable impairment of affective disorders, anxiety-related disorders, and stressor-related disorders were nonsevere (Tr. 18). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 20).

The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform sedentary work, except that Plaintiff has the following limitations:

> [H]e can lift and/or carry 20 pounds occasionally and 10 pounds frequently; he can stand and/or walk for about 2 hours and sit for at least 6 hours in an 8-hour workday with normal breaks; he requires a sit/stand option every 30 minutes, at will while remaining on task; he should never crawl or climb ladders, ropes, or scaffolds; he should only occasionally climb ramp and stairs; he should only occasionally kneel, stoop, or crouch; he can frequently balance with a cane and only occasionally balance without a cane; he should avoid concentrated exposure to temperature extremes, wetness, and humidity; he has limited depth perception; and he cannot perform work that requires commercial driving or exposure to hazards, such as unprotected heights or uncovered industrial machinery.

(Tr. 20). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 23).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform his past

relevant work (Tr. 25).  Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a document preparer, a lens inserter, and an order clerk (Tr. 26).  Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 26).

## II.

To be entitled to benefits, a claimant must be disabled, meaning the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. § 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. § 416.920(a).  Under this process, the ALJ must determine, in sequence, the following:  whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform

work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. § 416.920(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 416.920(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (citation omitted). The Commissioner's

failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

## III.

Plaintiff argues that the ALJ erred by (1) failing to properly consider the medical opinion of an examining consultative examiner; (2) failing to consider Plaintiff's mental impairments, vision impairments, and the use of a cane in the RFC assessment; and (3) relying on the VE's response to an incomplete hypothetical.[3]   For the following reasons, the ALJ applied the correct legal standards and the ALJ's decision is supported by substantial evidence.

### A.    Medical Opinion

Plaintiff contends that the ALJ erred in not giving substantial weight to Dr. Cecilia Yocum's medical opinion.  For the reasons that follow, substantial evidence supports the ALJ's decision to give little weight to Dr. Yocum's opinion.

When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor.  *Winschel*

---

[3] For clarity, this Order separates Plaintiff's second issue into two sections (RFC and Hypothetical to the VE).

*v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citation omitted).  The Social Security regulations provide guidelines for the ALJ to employ when evaluating medical opinion evidence.  *See* 20 C.F.R. § 416.927.[4]  In determining the weight to afford a medical opinion, the ALJ considers a variety of factors including, but not limited to, the examining relationship, the treatment relationship, whether an opinion is well supported, whether an opinion is consistent with the record as a whole, and the area of the doctor's specialization.  20 C.F.R. § 416.927(c).  For instance, the more evidence a medical source presents to support an opinion, such as medical signs and laboratory findings, the more weight that medical opinion will receive.  20 C.F.R. § 416.927(c)(3).  Further, the more consistent the medical opinion is with the record as a whole, the more weight that opinion will receive.  20 C.F.R. § 416.927(c)(4).

Typically, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (*per curiam*) (citation omitted).  Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the

---

[4] This regulation applies to claims filed before March 27, 2017.  *See* 20 C.F.R. § 416.927. Claims filed on or after March 27, 2017 are governed by a new regulation applying a somewhat modified standard for the handling of opinions from treating physicians.  *See* 20 C.F.R. § 416.920c; *see also Mijenes v. Comm'r of Soc Sec.*, 687 F. App'x 842, 848 n.2 (11th Cir. 2017).  Since Plaintiff filed his claim on April 25, 2016 (Tr. 368), 20 C.F.R. § 416.927 applies.

physician's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). In fact, the ALJ may reject any opinion when the evidence supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*). A reviewing court will not second guess an ALJ's decision about the weight to afford a medical opinion, however, so long as the ALJ articulates a specific justification for the decision. *See Hunter v. Soc. Sec. Admin. Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015).

Dr. Yocum conducted an independent medical examination of Plaintiff in October 2017 (Tr. 696-707, 708-20). The Eleventh Circuit has noted that the opinion of a one-time examiner receives no special deference or consideration. *See McSwain v. Bowen,* 814 F.2d 617, 619 (11th Cir. 1987) (opinions of one-time examiners are not entitled to deference because they are not treating physicians); *see also Eyre v. Comm'r of Soc. Sec.*, 586 F. App'x 521, 523 (11th Cir. 2014) ("The ALJ owes no deference to the opinion of a physician who conducted a single examination: as such a physician is not a treating physician."). Further, an ALJ may reject *any* medical opinion if the evidence supports a contrary finding. *See Williams v. Comm'r, Soc. Sec.*, 580 F. App'x 732, 734 (11th Cir. 2014) (citing *Sryock*, 764 F.2d at 835). However, the ALJ must articulate the weight given to medical opinions and the reasons for that weight. *See Winschel*, 631 F.3d at 1179.

The ALJ gave little weight to the opinion of Dr. Yocum, a one-time examiner, because there was no history of mental health treatment and Dr. Yocum's

opinion relied heavily on Plaintiff's subjective statements and many of those statements were not consistent with actual events.

First, the ALJ noted Plaintiff had "no evidence of a history of mental health treatment" (Tr. 24).   The lack of treatment notes from any mental health practitioners in the record undermines Plaintiff's claim that his mental impairments were severe or limited his ability to work.  *See Manzo v. Comm'r or Soc. Sec.*, 408 F. App'x 265, 269 (11th Cir. 2011) (citing a lack of mental health treatment in finding that substantial evidence supported an ALJ's finding that a claimant failed to establish that her anxiety was a severe mental impairment); *Ready v. Comm'r of Soc. Sec.*, No. 2:16-cv-573-FtM-MRM, 2017 WL 4277539, at *5 (M.D. Fla. Sept. 27, 2017) (finding that ALJ properly used the lack of medical records to show Plaintiff did not have severe mental impairment because "the record evidence is *insufficient* to support another conclusion— *i.e.*, that Plaintiff's mental impairments are severe").

Despite Plaintiff testifying that he has anxiety and is depressed (Tr. 42), Plaintiff rarely sought mental health treatment and Dr. Yocum's opinion was the only mental health professional to examine Plaintiff (Tr. 808-11). Dr. Yocum noted Plaintiff had attention issues, poor concentration, limited short-term memory, and low intermediate memory, but intact long-term memory and fair abstract reasoning (Tr. 810). Although Dr. Yocum noted Plaintiff had low mood, restricted affect, Dr. Yocum found his speech to be fairly clear, coherent, logical, and rational (Tr. 809). Dr. Yocum's diagnostic impressions included Neurocognitive Disorder, Mild to

Moderate; Major Depressive Disorder, Moderate; and Posttraumatic Stress Disorder (Tr. 810).

Despite Dr. Yocum's opinion, Plaintiff's medical records show no mental health treatment and only includes standard physical exam in January 2017 where Plaintiff had a PHQ-9 screening[5] that provided a score of 13 (moderate depression severity) and significant clinical symptoms in the depression screening (Tr. 837). Despite this assessment, the doctor noted Plaintiff had normal appearance, normal mood, normal affect, and his thought content revealed no impairment (Tr. 836). At Plaintiff's other various doctor's visits (not for mental health), Plaintiff was cooperative and had appropriate mood and affect (Tr. 202, 847, 858, 923, 1057, 1129, 1142, 1147, 1158). The doctors noted Plaintiff had normal judgment (Tr. 847, 858, 1158), and had normal recent and remote memory and normal mentation (Tr. 80, 847).

Plaintiff argues the evidence shows that he may not have been able to afford treatment. Although poverty does excuse non-compliance with treatment, Plaintiff did not state that he did not seek mental health treatment because of his poverty. *See Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1998). But Plaintiff did not address that at the hearing before the ALJ. Instead, Plaintiff does not explain why he does not seek mental health treatment despite him saying he believes he needs it.

---

[5] The PHQ-9 (Patient Health Questionnaire) is a "self-administered tool[ ] for assessing depression." *Patient Health Questionnaire*, American Psychological Association, https://www.apa.org/pi/about/publications/caregivers/practice-settings/assessment/tools/patient-health (last updated June 2020).

Thus, the ALJ did not err in considering Plaintiff's lack of mental health treatment as a reason for discounting Dr. Yocum's opinion.

Second, the ALJ noted Dr. Yocum's opinion relied heavily on Plaintiff's subjective statements and many of the statements Plaintiff made conflicted with actual events.  Specifically, the ALJ noted Plaintiff told Dr. Yocum that his feet were cut off in an accident and had to be screwed back on, but the medical records show Plaintiff fell and twisted his ankle resulting in a "distal fibular fracture with multiple small fractures, severely dislocated tibiotalar joint with open soft tissue injury" (Tr. 598).  Indeed, a physician's primary reliance on subjective complaints as the basis for an opinion establishes good cause for affording such opinion less than controlling weight.  *Forsyth v. Comm'r of Soc. Sec.*, 503 F. App'x 892, 893 (11th Cir. 2013) (finding that good cause existed for affording a treating physician's opinion less weight where the physician relied too heavily on the plaintiff's subjective reports).

The majority of Dr. Yocum's opinion is a recitation of Plaintiff's subjective complaints and shows very little objective evidence supporting the ALJ's finding that Dr. Yocum based her opinion of disabling impairments on Plaintiff's subjective reports of pain, which the ALJ found were not fully credible (*See* Tr. 21-23).  That determination is unchallenged, and, thus, the Court must accept the ALJ's findings on this regard.  *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (stating that "credibility determinations are the province of the ALJ") (citation omitted).  Therefore, in all events, it is appropriate for the ALJ to consider the lack of

supporting objective medical evidence in determining the weight to give Dr. Yocum's opinion. *See Majkut v. Comm'r of Soc. Sec.*, 394 F. App'x 660, 664 (11th Cir. 2010) (discounting the weight given to a treating physician in part because the opinion was based on the plaintiff's subjective complaints which the law judge found were not credible); *Young v. Saul*, No. 8:19-cv-005-T-TGW, 2020 WL 1320612, at *4 (M.D. Fla. Mar. 13, 2020) (finding that the ALJ correctly consider the lack of objective medical evidence and only subjective complaints when discounting a physician's opinion). Thus, the ALJ did not err in considering Dr. Yocum's reliance on Plaintiff's subjective complaints as a reason for discounting Dr. Yocum's opinion.

Substantial evidence supports the reasons the ALJ gave for discounting Dr. Yocum's opinion.

**B.    RFC**

Plaintiff alleges that the RFC assessment does not account for Plaintiff's mental impairments, vision impairments, and use of a case.  For the reasons that follow, substantial evidence supports the ALJ's RFC assessment.

Before Steps Four and Five of the sequential evaluation process, an ALJ must determine a claimant's RFC. 20 C.F.R. § 416.920(a)(4)(iv).  An RFC assessment represents "the most" a claimant "can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1).  The RFC must consider all of the medical evidence in the record, and must reflect all of the claimant's physical, mental, and environmental restrictions.  20 C.F.R. § 416.945(a)(1) and (3).  Additionally, the Eleventh Circuit

has held that an RFC assessment must describe the combined effects of all of a claimant's impairments. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984); *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987); *Reeves v. Heckler*, 734 F.2d 519, 525 (11th Cir. 1984).

The issue is not whether some evidence might support Plaintiff's allegations, but whether substantial evidence supports the ALJ's findings. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *see also Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) ("The question is not . . . whether the ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it"). Under a substantial evidence standard of review, Plaintiff cannot merely identify evidence in the record supporting her position but must show the absence of substantial evidence supporting the ALJ's conclusion. *See Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017).

Plaintiff sets forth three arguments on how the RFC failed to consider all the medical evidence that reflect Plaintiff's limitations: (1) the ALJ failed to consider the effect of Plaintiff's mental impairments on his ability to perform work related activities; (2) the ALJ failed to adequately address Plaintiff's vision impairments; and (3) the ALJ failed to address how Plaintiff's use of a cane for balancing when standing would affect the RFC.

### 1.      Mental Impairments

Although Plaintiff argues the ALJ failed to include any of her mental impairments in the RFC assessment,[6] the record shows that the ALJ properly considered Plaintiff's mental impairments in making his RFC assessment and that substantial evidence supports the ALJ's decision not to include mental impairments in the RFC determination (*See* Tr. 15-26).   Specifically, the ALJ determined that Plaintiff's mental impairments "do not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and are therefore nonsevere" (Tr. 18).   In making this finding, the ALJ stated that Plaintiff's "mental impairments have been intermittent with no treatment" and his "exacerbations and/or treatment throughout the record appear to be somewhat situational and the record indicates that his symptoms were a result secondary to his psychosocial problems" (Tr. 18).

Contrary to Plaintiff's assertion, the ALJ did not fail to analyze the effects of Plaintiff's mental impairments on his ability to work.   For instance, in making the severity determination, the ALJ cited the two medical records containing findings

---

[6] Plaintiff does not argue that the ALJ erred in not finding his mental impairments to be severe.  Thus, this issue is waived.  *See Outlaw v. Barnhart*, 197 F. App'x 825, 828 n. 3 (11th Cir. 2006) (noting that an issue was waived because the claimant did not elaborate on the claim or provide citation to authority about the claim).  Even if Plaintiff does argue the ALJ erred in not finding his mental impairments to be severe, the error is harmless because the ALJ determined that Plaintiff suffered from severe impairments at step two, and thus proceeded beyond step two in the sequential analysis, any error in failing to find that Plaintiff suffered from other severe impairments is rendered harmless.  *Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 892 (11th Cir. 2013) (*per curiam*) ("[T]he ALJ determined at step two that at least one severe impairment existed; the threshold inquiry at step two therefore was satisfied.").

on Plaintiffs mental health, along with Plaintiff's testimony (Tr. 18-19). The ALJ discussed Dr. Yocum's opinion and what Plaintiff said to Dr. Yocum that highlighted Plaintiff's mental impairments stem from external factors such as his injuries, the death of family members, and his living situation (living in an area with frequent criminal activity) (Tr. 18). As discussed above, the ALJ properly discounted Dr. Yocum's opinion about Plaintiff's mental impairments (*See* Tr. 24). The ALJ also discussed the state agency psychologist's opinion that found Plaintiff had mild limitations after reviewing the record, which included very little mental health treatment outside Dr. Yocum's consultative exam, and Plaintiff's prior applications that did not mention any mental impairments (Tr. 18-19).

Plaintiff also contends a January 2017 physical where his PHQ-9 score of 13 shows Plaintiff's depression was more than mild or moderate. However, at his August 2018 physical, Plaintiff's PHQ-9 screening revealed a score 7 (mild depression severity) (Tr. 846). At that physical, Plaintiff noted no depression or anxiety and the doctor noted Plaintiff had good judgment, normal mood and affect, normal recent and remote memory, and appeared active and alert (Tr. 847). Thus, the ALJ's finding that Plaintiff can perform "basic mental work activities" is supported by substantial evidence of record (*See* Tr. 18).

Further, the ALJ evaluated Plaintiff's mental limitations using the four functional areas of "paragraph B" criteria from 20 C.F.R., Part 404, Subpart P, Appendix 1 (Tr. 19). First, the ALJ evaluated Plaintiff's functional area of understanding, remembering, and applying information. The ALJ determined that

Plaintiff had only mild impairments in this area because even though he does not understand written directions most of the time, Plaintiff can follow spoken instructions if he can hear it (Tr. 19).   Second, the ALJ evaluated Plaintiff's functional area of interacting with others finding that Plaintiff had only mild limitations because even though he rarely spends time with others, he can get along well with authority figures (Tr. 19).   Third, the ALJ found that Plaintiff had only mild limitations with in concentrating, persisting or maintaining pace (Tr. 19). Specifically, while acknowledging that Plaintiff has some concentration and attention problems, the ALJ nevertheless attributed those issues to situational injuries and his prior report that he was diagnosed with attention deficit hyperactivity (Tr. 19).   Finally, the ALJ noted that Plaintiff had no limitation in adapting or managing himself (Tr. 19).   Based on having only mild limitations in the first three areas and no limitation in the fourth, the ALJ determined that Plaintiff's mental impairments were non-severe (Tr. 18).   Upon an independent review of the record, including Plaintiff's testimony, the Court cannot conclude that the ALJ erred in making this determination.

After reviewing the record evidence, the ALJ properly declined to add any limitations in the RFC determination related to Plaintiff's alleged mental impairments.  *See Sumlin v. Saul*, No. 8:19-cv-3126-T-30AAS, 2020 WL 7232240, at *6-7 (M.D. Fla. Nov. 23, 2020), *report and recommendation adopted* 2020 WL 7229746 (M.D. Fla. Dec. 8, 2020).   Therefore, substantial evidence supports the ALJ's decision not to include mental limitations in the RFC analysis.

## 2.    Vision Impairments

Plaintiff alleges the ALJ failed to properly consider his vision impairments. For the reasons that follow, substantial evidence supports the ALJ's consideration of Plaintiff's vision impairments.

Plaintiff contends the ALJ failed to consider his left eye extraocular muscle deviation because this deviation was not documented until August 2018 and did not last for twelve months.  Plaintiff focuses on the ALJ saying the left eye deviation had not lasted for twelve months and points to a November 2016 consultive exam where the doctor noted an impression of strabismus of the left eye (which is a disorder where the eyes do not line up in the same direction). Even though the ALJ only mentioned the August 2018 exam and not the November 2016 exam, that erroneous factual statement is harmless error.  *See Majkut v. Comm'r of Soc. Sec.*, 394 F. App'x 660, 665 (11th Cir. 2010) ("In a Social Security case, erroneous factual statements by the ALJ may constitute harmless error if the ALJ applies the proper legal standard.").

This erroneous factual statement does not change the fact that the evidence does not show Plaintiff's left eye condition lasted for twelve consecutive months. An impairment must be severe for at least twelve consecutive months to qualify as a severe impairment at step two of the sequential evaluation process.  20 C.F.R. §§ 416.905(a), 416.909, 416.920(a)(4)(ii); *Barnhart v. Walton*, 535 U.S. 212, 217 (2002). In November 2016, Plaintiff attended a consultative exam with Dr. Charles Lebowitz for Plaintiff's ankle issues (Tr. 800-03).  At that exam, Dr. Lebowitz found

on physical exam that Plaintiff had strabismus of the left eye (Tr. 801). Despite Dr. Lebowitz's finding, doctor's visits from November 2016 to August 2018 showed normal eye exams with intact extraocular movements and included no findings about Plaintiff's left eye (Tr. 923, 993, 1012, 1057, 1129, 1147). It was not until the August 2018 emergency room visit that showed a change in Plaintiff's left eye with a lateral deviation noted with involuntary movement (Tr. 847). Thus, the ALJ properly found Plaintiff's left eye impairment was non-severe.[7]

Plaintiff also contends the ALJ did not properly include limitations in the RFC to account for Plaintiff's right eye cataract despite the ALJ finding it to be a severe impairment. Specifically, Plaintiff asserts the ALJ erred by failing to include any visual acuity limitations in the RFC but only references medical evidence that Plaintiff needs glasses. Plaintiff fails to show any medical evidence in the record that greater limitations are necessary. *See Sanchez v. Colvin*, No. 8:13-cv-1883-T-AEP, 2014 WL 12633495, at *7 (M.D. Fla. Sept. 23, 2014) (explaining Plaintiff failed to point to any evidence in the record to support greater limitations in the RFC). Within the medical records, the doctors noted no vision problems with normal eye movement (Tr. 835, 923, 993, 1012, 1057, 1129, 1147). Although Plaintiff's vision decreased in August 2018 (Tr. 849), prior eye exams showed normal vision (Tr. 993). Despite the little medical evidence, the ALJ included in

---

[7] Again, any error to find Plaintiff's left eye impairment as non-severe is harmless because the ALJ found Plaintiff had severe impairments at step two and proceeded with the disability analysis. *See Packer*, 542 F. App'x at 892.

the RFC a finding that Plaintiff had limited depth perception to account for Plaintiff's vision issues from his right eye cataract.

Therefore, substantial evidence supports the ALJ's decision not to include additional limitations related to vision in the RFC analysis.

### 3.    Use of Cane

Plaintiff contends the RFC should have included a more restrictive limitation that Plaintiff would need to use his cane for balance. At the hearing, in the hypothetical provided to the VE, the ALJ noted Plaintiff "requires a cane to ambulate and so balance would be no more than occasional without the cane, frequent with the cane" (Tr. 54). Despite no medical opinion stating Plaintiff required an assistive device (cane, walker, or crutches), the ALJ found Plaintiff's RFC needed to included limitations about his ability to use a cane by considering Plaintiff's subjective complaints (even though the complaints were not entirely consistent with the record) (*See* Tr. 20-23).

At his consultive exams in 2016, Drs. Lebowitz and Yocum noted that Plaintiff used assistive devices at home and struggled with walking on his ankle often with episodes of falling (Tr. 801-02, 809). Despite these notations, there was no mention of a cane or walker at those appointments. Further, the ALJ explained that in "the most recent six medical visits over the prior year," the medical records contain no mention of walking issues or assistive devices (Tr. 23). The medical evidence supports the ALJ's statement. At doctor's visits throughout 2017 and 2018, none of the medical records stated that Plaintiff used a walker or cane (*See* Tr.

835-39, 845-50, 922-24, 992-93, 1056-57, 1128-29).   Despite the little medical evidence, the ALJ included in the RFC a finding that Plaintiff used a cane frequently for balance and only occasional for balance to account for Plaintiff's use of assistive devices.

Despite asserting the ALJ should have included Plaintiff needed to use the cane while standing for balance, Plaintiff fails to show any medical evidence supporting that limitation.   No physician rendered an opinion suggesting that Plaintiff needed a cane for balance.   *See Livingston v. Berryhill*, No. 8:17-cv-2276-T-33AEP, 2018 WL 7133679, at *3 (M.D. Fla. Dec. 27, 2018), *report and recommendation adopted* 2019 WL 329685 (M.D. Fla. Jan. 25, 2019).   Although the medical records noted some impaired balance and abnormal gait (Tr. 831, 1098), most of the medical records show normal/steady gait and stance, often with Plaintiff not identifying any concerns on his right ankle (Tr. 847, 879, 922-23, 1012, 1129, 1158).

Therefore, substantial evidence supports the ALJ's decision not to include a limitation for Plaintiff to use the cane for balance when standing in the RFC analysis.

C.   **Hypothetical to the VE**

Plaintiff asserts the ALJ's hypothetical to the VE was not complete because it did not include the limitations Plaintiff argues above should have been incorporated into the RFC.   The hypothetical provided by the ALJ to the VE must accounts for all of the claimant's impairments.   *Ingram v. Comm'r of Soc. Sec.*, 496

F.3d 1253, 1270 (11th Cir. 2007) (citation omitted).  When the ALJ properly rejects purported impairments or limitations, the ALJ need not include those findings in the hypothetical posed to the VE.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).  Because additional limitations were not warranted, as discussed above, those additional limitations were not included in the hypothetical to the VE.  Therefore, the ALJ properly submitted Plaintiff's RFC to the VE.

Accordingly, the ALJ relied on the VE's testimony in response to the hypotheticals with the supported limitations that Plaintiff could perform other work that existed in significant numbers in the national economy (Tr. 25-26).  As such, the VE's testimony constituted substantial evidence supporting the ALJ's finding that Plaintiff was not disabled.

## IV.

Accordingly, after consideration, it is hereby

ORDERED:

1.  The decision of the Commissioner is affirmed.

2.  The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 30th day of August 2021.

ANTHONY E. PORCELLI
United States Magistrate Judge

cc:  Counsel of Record